ALONZO L. BAKER

*v.*

LOUIS ROCKABRAND.

*Filed at Ottawa October 6, 1886.*

1. JURISDICTION — *city court of Aurora—bill to rescind contract for exchange of lands—situs of lands to be affected.* The city court of Aurora has jurisdiction of a bill to rescind an executed contract for the exchange of lands, for fraud, and to enjoin the prosecution of an action at law for the recovery of one of the tracts of land, where it acquires jurisdiction of the person of the defendant, although the lands the title to which may be affected by the decree are not within the limits of the city.

2. SAME—*jurisdiction territorially, in respect to title to lands—and to stay proceedings in suit at law.* Where effect may be given to a decree rescinding a contract of exchange of lands, by compelling the defendant to reconvey, jurisdiction of the person of the defendant will give the court power to proceed to final decree, although the land, the title to which is affected thereby, may not be within the territorial jurisdiction of the court.*

---

*See, also, *Johnson* v. *Gibson et al.* 116 Ill. 294, and authorities there cited.

3. RESCISSION *of executed contract—for fraud.* Where a false representation of any material fact is made by one party, and the other, in ignorance of the truth, relies upon such false representation, and is thereby induced to enter into a contract, to his injury, such representation will vitiate and avoid the contract, and if the injured party in apt time offers to rescind, and invokes the aid of a court of equity, relief will be granted, and the parties restored to their original status.

4. In this case, the equitable owner of a tract of land in this State, exchanged the same for land in the State of Missouri, possession of the latter tract to be given on the first day of the following March. The owner of the Missouri land positively assured the other party that his land was in the possession of a tenant whose term would expire on March 1, next ensuing, when, in fact, the land was leased for two years longer, at a nominal rent of $50 a year: *Held,* that for the false representation as to the leasing of the Missouri land and when possession could be lawfully had, the other party had a right to rescind the exchange by tendering a reconveyance of the Missouri land, and the fact that the legal title of the Illinois land had been in another, who conveyed to the defendant, was no impediment to the right of rescission.

5. NEW TRIAL, *on the evidence—in chancery.* Where, on a hearing in chancery, the trial court has seen and heard the witnesses on the stand, and thus had opportunity of observing their manner of testifying, and appearance, a reviewing court will attach great weight to its findings, and will not reverse for a finding of fact, unless palpably erroneous. But when the evidence is heard in the form of depositions, this rule fails.

APPEAL from the City Court of Aurora.

Mr. M. O. SOUTHWORTH, for the appellant:

When the property lies at a distance, so that the truthfulness of representations respecting it can not be ascertained, a party may rely on them. *Hiner* v. *Richter,* 51 Ill. 299; *Weatherforce* v. *Fishback,* 3 Scam. 171; *Gordon* v. *Parmalee,* 2 Allen, 212; Cooley on Torts, 474.

That we are entitled to a rescission for the fraud, reference is made to *Deen* v. *Lewis,* 51 Ill. 254; *Thomas* v. *Coultas,* 76 id. 493; *Hall* v. *Fullerton,* 69 id. 448; *Merwin* v. *Arbuckle,* 81 id. 501; *Railway Co.* v. *Rice,* 85 id. 406; *Hammond* v. *Pennock,* 61 N. Y. 145; *Long* v. *Warren,* 68 id. 426; *Mead* v. *Bunn,* 32 id. 275; *Coop* v. *Handy,* 41 Barb. 454; *Whitney* v. *Allaire,* 1 Com. 305.

Mr. A. C. LITTLE, and Mr. SAMUEL ALSCHULER, for the appellee:

This is a suit wherein real estate must, of necessity, be affected, and wherein the prosecution of a suit at law, now pending in the county court of Kane county, is sought to be enjoined.

The city court of Aurora is a court of limited jurisdiction, being circumscribed by the corporate limits of the city of Aurora.  Rev. Stat. chap. 37, sec. 191.

"Suits in chancery,  *  *  *  if the suit may affect real estate, shall be commenced in the county where the same or some portion thereof is situated."  Rev. Stat. chap. 22, sec. 3.

"Bills for injunction, to stay proceedings at law, shall be brought in the county in which the proceedings at law are had."  Rev. Stat. chap. 22, sec. 3; chap. 69, sec. 4.

The so-called Aurora property does not lie within the limits of the city of Aurora, but a little south-east thereof.

It is a well settled rule of law that the plaintiff must show that he has an interest in the subject matter, before he can recover.  The complainant never owned the Aurora property he seeks to have reconveyed to George M. Hern.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

This was a bill in chancery, filed in the city court of the city of Aurora, by appellant, to rescind an exchange of lands, and compel appellee to reconvey the tract conveyed to him by appellant, and to enjoin certain forcible entry and detainer suits then pending in the county court of Kane county, brought by appellee, to recover possession of such tract of land.  Upon hearing, the court dissolved the injunction and dismissed the bill, from which decree this appeal is prosecuted.

It appears that appellant, claiming to be the owner of a tract of land lying near the city of Aurora, in this State, entered into negotiations with appellee, who was owner of an

eighty-acre tract in Macon county, Missouri, for an exchange
of properties.    The legal title of appellant's land was in one
Hem, who held it by way of mortgage, and who, it appears,
was willing to convey at appellant's request.  Upon appellant's
tract was a mortgage to secure $700, while appellee's land
was incumbered by a mortgage for $600.    Appellant was in
possession of the Aurora land, and the Missouri tract was
occupied by one Carr, as the tenant of appellee.   It was also
understood that appellant made the trade with the expecta-
tion of removing upon the Missouri land, with his family,
the 1st of March following, appellee conceding that he repre-
sented that Carr's right, as his lessee, would then terminate,
and, as appellant could not get possession until the 1st day
of March, 1884, it was agreed that he should occupy the
Aurora premises until that date, at a rental of $8 per month,
after the 1st day of October then next following.   No value
seems to have been put upon either tract, but the trade was
consummated, appellee assuming the $700 mortgage·on the
property he received, and appellant assuming the $600 mort-
gage on the Missouri land, and on the 14th day of Septem-
ber, 1883, deeds were exchanged, conveying to appellant the
Missouri land, and to appellee the tract near Aurora.    It is
abundantly proved, if it was not substantially conceded, that
appellee represented, during the negotiations, and again on
. ·the day of the acknowledgment and delivery of the deeds, that
Carr's lease to the Missouri land would expire March 1 fol-
lowing, and that appellant would be entitled to possession on
that day.    The attention of appellee was specifically called,
by the scrivener who drew the deeds, to the question of when
the lease to Carr would expire and when appellant could get
possession, and the representations were repeated, and appel-
lant assured that he could get and would be entitled to go
into possession of the land conveyed to him, on the 1st day of
March, 1884, and that Carr's lease then expired.    The only
question of fact really controverted by appellee, in his answer

and at the hearing, was, whether Carr's lease did expire that day.

Immediately upon receiving his deed, appellant went to Missouri to see his purchase, found Carr in possession under a written lease from appellee, expiring March 1, 1886. Carr refused to agree to surrender March 1, 1884, and insisted upon holding the full term of his lease, as he claimed it to be, unless paid $250 for a surrender of it. Appellant returned to Aurora about the 1st day of October, and upon his return went to appellee, told him of the claim of Carr, and demanded a rescission of the contract, and upon appellee refusing to do so, on the 3d day of October caused said Hem to execute and acknowledge a deed reconveying said Missouri land, and the same, properly acknowledged, was on that day tendered to appellee, and a reconveyance of the Aurora property demanded. Appellee refused to accept the deed tendered, or to reconvey. No objection is made that the deed tendered was not, in every way, sufficient to reinvest appellee with the title to the Missouri land. A notice to quit was served on the tenant, Carr, who refused to surrender March 1, 1884, unless paid for his unexpired term of two years. And afterwards, on the 6th day of March, the deed from Hem to appellee was again tendered, and a reconveyance of the Aurora tract of land demanded. Appellee again refused to accept the deed or reconvey. After the tender of the deed to appellee and the attempt by appellant to rescind, he refused to pay rent to appellee, and forcible detainer proceedings were brought by appellee to recover possession of the land near Aurora, and which suits were pending, on appeal, in the county court of Kane county, when this bill was filed.

Upon looking into the evidence, we find that the only point really in controversy is between appellee and his tenant, Carr. Appellee nowhere denies the representations alleged, but insists that they were true, and that, in fact, the lease of Carr

did expire March 1, 1884, and his right to the Missouri land then terminated.

This court has frequently said, that when the trial court saw and heard the witnesses, with the opportunity of observing them while testifying, this court would attach much weight to the finding of the trial court, and would not reverse upon mere questions of fact unless such finding was palpably erroneous, and we are not disposed to depart from that rule. But in cases where, as in the one at bar, the evidence is in the form of depositions, the reason of the rule fails. This court, having the same facility of determining the truth or falsity of the testimony, must determine, from the record, the questions of fact, as shall appear just and right. The witnesses Carr and his wife both testify that they went into occupancy of the Missouri land under a lease running from March 1, 1881, to March 1, 1882; that they held over under that lease until some time in December, 1882, when appellee came to their house, on the land, and an agreement was entered into between Carr and appellee, by which there was a re-leasing to Carr, the term to end March 1, 1886, at the same annual rental; that after the agreement was made they were about to prepare a new lease, when appellee suggested that it would do just as well to change the date of the old lease, and make it terminate March 1, 1886; that thereupon the figures in the old lease were changed by Carr, in appellee's presence and at his suggestion, and the lease, thus changed, delivered to Carr, and kept by him. These two witnesses are not impeached or contradicted by any one, except by the appellee, who denies *in toto* the extension of the lease after March 1, 1884.

Conceding that Carr and his wife and appellee are *interested* witnesses, there are two to one testifying to the affirmative fact. Besides, the Carrs are corroborated by the production of the original lease, changed as described and testified to by them, leasing the land to Carr to March 1, 1886. Appellant testifies, that after his return from Missouri, about October 1,

1883, he notified appellee that Carr claimed to have leased the land until March 1, 1886; that he had paid appellee the rent for the entire term, and that Carr refused to surrender on March 1, 1884, unless paid $250 for so doing, and that appellee then admitted that he had leased to Carr until March, 1886, but denied that Carr had paid rent for the premises beyond March 1, 1884. Appellee is also shown to have been at the land in Missouri at the date alleged by Carr that the new contract of leasing was made. It is true, that appellee denies these admissions, and, as before stated, denies any extension of the contract of leasing after March 1, 1884. It is impossible for us to conceive how his testimony, unsupported, can overcome the evidence of the Carrs, supported and corroborated, as before stated. We are of opinion that the lease to Carr is shown, by a clear preponderance of the evidence, to have expired March 1, 1886, and not March 1, 1884. Indeed, the lease itself shows that fact, and in view of this evidence we can not hold that it was a forgery.

It is insisted that the city court of Aurora did not have jurisdiction, because none of the land sought to be affected was situated within the corporate limits of that city. The statute (chap. 37, sec. 274, Starr & Curtis,) provides, that such city courts "shall have concurrent jurisdiction with the circuit court, within the city in which the same may be, in all civil cases." It is true, the effect of a recovery by complainant will be to divest appellee's title; but the land can not be said to be directly affected. The purpose and scope of the bill is to complete the rescission of the contract, and compel appellee to restore that which he has wrongfully received. Effect can be given to such a decree by acting upon the person of the defendant, and in such cases the rule is, that jurisdiction of the person invests the court with power to proceed to final decree. (*Enos* v. *Hunter*, 4 Gilm. 211; *Cooley* v. *Scarlett*, 38 Ill. 316.) Here, as the court, within its territorial jurisdiction, had all the power of a court of chancery, and had jurisdiction

of the person of the defendant, there is no reason why, by the exercise of its chancery powers, it might not compel him to do equity.

It is also contended, that as the statute provides that "bills for injunction to stay proceedings at law shall be brought in the county in which the proceedings at law are had," the injunction was properly dissolved in this case. The forcible detainer proceedings were pending in the county court of Kane county, which, by law, is to be held at the county seat of that county. It will be sufficient to say, that the injunction was ancillary, merely, to the main purpose of the bill, and if the court had jurisdiction to grant the relief sought, it had power to preserve *statu quo* until effect could be given its decree for relief.

The remaining question in the case involves the determination of the right of appellant to rescind the contract of exchange of lands. It is apparent, and, indeed, not controverted, that appellant traded for the Missouri land with the intention of removing thereon March 1, 1884. At that time he was to surrender possession of the premises on which he then lived with his family, and, as we have seen, was repeatedly assured by appellee that he could then get possession of his purchase. If this transaction is to be upheld, it follows that he must surrender his Aurora property March 1, 1884, and be postponed two years before he can enter into the enjoyment of the premises he had purchased with the intent to make a home for his family. Appellee is abundantly shown to have been apprised of the purpose of appellant in consummating the exchange of properties. The right of possession of real estate forms an essential element in determining the value, and this is especially so where it is designed to occupy it as a homestead. Here, appellant, surrendering his home, was compelled to lose the right of occupancy for two years, at a nominal rental of $50 per annum, and this appellee knew, and not only suppressed the fact, but, as shown by the weight

of the evidence, suggested the falsehood by which appellant was induced to make the trade, relying upon the right to enter into occupancy March, 1884. The fact of Carr's rights, under his lease, must have been known to appellee, and appellant had a right to rely upon his representations in respect thereto. The trade was made at Aurora, Illinois, some hundreds of miles from the Missouri land. Appellant had no knowledge, nor was there anything to put him upon inquiry, as to Carr's holding, and it became not only the moral, but legal, duty of appellee to represent truthfully every material fact in reference to it. That appellee knew appellant was relying on his representations, can not, in view of this record, be denied, and common honesty between men required, not only that he should not suppress the truth, but that he should not suggest and represent an untruth. When it is apparent that a false representation of any material fact is made, and the other party, in ignorance of the truth, relies upon such false representations, and is induced thereby to enter into a contract to his injury, such representations will vitiate and avoid the contract. And when the injured party, in apt time, offers to rescind, and invokes the aid of a court of equity, relief will be granted, and the parties restored to their original status. 1 Story's Eq. secs. 193, 197, 204; *Lockridge* v. *Foster*, 4 Scam. 569; *Mitchell* v. *McDougall*, 62 Ill. 500.

It is apparent, that appellant did not get that for which he traded; that he parted with the title to his property relying upon the truth of the representation that he could enter into the enjoyment of his purchase the following March; that he made the trade with the expressed intention of so doing; that upon finding that he must surrender possession March 1, 1884, of his property, and seek a home elsewhere for two years before he had a right of entry into his purchase, he at once offered to restore the appellee to his former rights, and demanded a reconveyance of his property. We think the case falls clearly within the rule authorizing a rescission of the

contract.   Nor is there any force in the contention, that as the legal title was in said Hem, appellant has no standing in a court of equity.   The record shows that appellant was the equitable owner of the land conveyed to appellee, and a court of equity, having regard for the substantial rights of the parties, will treat him as the owner, and restore him to his rights in these lands.

We are therefore of opinion that the city court erred in dissolving the injunction and dismissing the bill.   The decree of that court will be reversed, and the cause remanded to that court, with directions, that, upon appellant's filing with the clerk of that court, for the use of appellee, a deed conveying to appellee the title to said Missouri land mentioned in the bill and answer in this case, which appellee, by his deed, conveyed to said Hem, a decree be entered in said court making the injunction herein perpetual, and requiring appellee to reconvey to appellant, or to said Hem, as the right shall appear, the said tract of land by said Hem conveyed to appellee, and mentioned in said bill and answer, by a day to be fixed by that court, and, by appropriate orders entered in that behalf, enforce said decree conformably to the practice in chancery in like cases.                         *Decree reversed.*