JEFFERSON SHULTS

*v.*

ELIZABETH SHULTS.

*Filed at Ottawa October 11, 1895—Rehearing denied March 10, 1896.*

1. DEEDS—*delivery of, in escrow—when sufficient.* Delivery of a deed to a third person in escrow is sufficient if the grantor, by his act of delivery, loses all control over the instrument and by it the grantee is to become possessed of the estate.

2. SAME—*intention of grantor as to delivery controls.* The intention of the grantor is the controlling element in respect to the sufficiency of the delivery of a deed in escrow, to be delivered to the grantee after his death.

3. SAME—*effect of acts of ownership by grantor after delivery of deed in escrow.* Exercising acts of ownership over the premises, (such as a sale of a portion of the property and a proposal to sell the rest,) after delivery of a deed thereof to a third person as a voluntary settlement, which deed was not to take effect until after the grantor's death, shows the delivery was not intended to pass title.

4. SAME—*how question of delivery is to be determined.* The question of delivery in escrow is one both of law and of fact, and from the facts and circumstances of the transaction the legal question as to delivery is to be determined.

5. EVIDENCE—*presumption of delivery in case of voluntary settlement.* Stronger presumptions arise in favor of the delivery of a deed in escrow as a voluntary settlement upon a child than in an ordinary case of bargain and sale.

6. APPEALS AND ERRORS—*how far decree of trial court is final.* The decree of the trial court, in so far as it determines questions of fact, will not be reversed unless it shows palpable error.

7. CLOUD—*what is a cloud on title to real estate.* A semblance of title shown by a bill in equity claiming title to real property may constitute a cloud upon title which equity may remove, even though such bill was dismissed without a hearing on the merits.

APPEAL from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

At the November term, 1892, of the circuit court of Cook county a bill in chancery was filed by appellee, against appellant, seeking to remove a cloud and quiet title to lots 4 and 5, block 26, and lots 1, 2, 3 and 4, block 27, Ravenswood subdivision of part of the north-east

quarter of the south-east quarter of section 18, and part of section 17, in township 40, north, range 14, east of the third principal meridian, in Cook county. The bill alleges the former ownership of this property by Josiah J. Shults, the deceased husband of appellee, and that he died in July, 1884, leaving a last will and testament, in and by which he devised to her all his real estate in fee, and that she is now the owner of said premises, which are vacant and unoccupied. It is alleged in the bill that in March, 1889, appellant, who was a son of Josiah J. Shults by a former marriage, had filed in the circuit court of Cook county his bill in chancery against appellee and others, charging that Josiah J. Shults in his lifetime had executed a deed for these premises to appellant and delivered it in escrow to one Milo C. Dewey, and praying that his title be established, etc.; that this latter bill had been dismissed for want of prosecution and without any decree on its merits. Appellee alleges that the allegations in that bill were untrue, but that, by reason of its having been filed and not disposed of on its merits, the proceedings appear on all abstracts of title and are a cloud thereon, which tends to depreciate her title and interfere with a sale of the premises. The bill prays that the proceedings in said former case be set aside, annulled and declared of no effect. The answer of Jefferson Shults denied that appellee was the owner of this property, but set forth that in 1882 his father executed to him a deed for lots 1, 2, 3 and 4, in block 27, above described, which he placed in the hands of Dewey to be delivered after the death of the grantor, but that appellee secured possession of the deed and destroyed it. Appellant also exhibited his cross-bill setting up these facts and asking affirmative relief. Appellee filed her answer to this, denying the material allegations, and setting up also the defense of possession under claim and color of title for seven years, and payment of taxes, and *laches* on the part of appellant.

The testimony, as produced before the chancellor, was in the form of depositions, and also of witnesses introduced and heard in open court, and tended to establish about the following facts: In February, 1882, Josiah J. Shults, then about seventy-five years of age and residing near Plano, called in J. H. Jenks, a notary public, and instructed him to make certain division deeds of his property to his children and to prepare a will. Each of his sons, Jefferson, Joel and Levi, was then occupying a farm the title of which was in the father. Deeds were executed to each of them, respectively, and also a deed to Jefferson, the appellant, for some Wisconsin land. Of the twelve lots in Ravenswood, part of which is in controversy, four were deeded to each son, and the deeds executed by Josiah J. Shults, and appellee, his wife. Shults was in poor health at that time and did not expect to live. He stated to the notary that he was going to leave the deeds, as long as he lived, with one Milo C. Dewey, who was to be one of the executors of his will; that he was leaving them there for safe keeping, as Dewey had a good safe, and when he died they could be put on record for each of the sons, and if he wanted them he could get them at any time. Dewey is not a witness in this case, but it sufficiently appears from the testimony of Jenks that the deeds were left with Dewey, but under what arrangements or conditions, further than as above indicated, is not shown. Appellant states that in November of 1882 he was handed the deed to the Wisconsin land by Dewey, who stated that his father desired him to have it then; that Dewey stated he had the other deeds in his possession, locked in his safe, and was to deliver them after the death of appellant's father. Appellant also says that in February, 1882, he had a conversation with his father, who said that he had executed deeds to him of the Illinois and Wisconsin farms and the four Ravenswood lots, and that they were given to Dewey to be handed to appellant after his (the father's) death.

This is contradicted by Levi Shults, who says that on the day of his father's burial, in a conversation with appellant, witness told him that deeds to the Ravenswood lots had been made, and appellant told him that was the first he had known of such deeds having been executed. It sufficiently appears, however, that the deeds remained in Dewey's safe for about two years, and during this time Josiah Shults manifested some dissatisfaction with the settlements he had made, and had been trying to dispose of the Ravenswood property. He took the deeds and his will from Dewey's safe to his house. About this time he sold two of the Ravenswood lots, and expressed the opinion that this interfered with the division he had made and would necessitate a change. On the same day he got the deeds from Dewey he expressed his dissatisfaction with his former arrangement or settlement, and said he was going to destroy them, and appellee, on coming into the room where he was looking over his papers, found torn papers on the floor, and at her husband's direction she burned them. In May, 1884, the son Levi says his father told him he had destroyed these deeds. The will and deeds not burned were thereafter kept at his house, and remained there until the death of Josiah Shults, in July, 1884. An examination of the box in which they were kept disclosed the will and deeds for the respective farms, but the three deeds for the Ravenswood property were missing. Subsequently to the execution of these deeds and the depositing with Dewey, it appeared that Josiah Shults had frequently urged his agent in Chicago to try and make sale of these lots, and that two of them, which were a part of those named in the deed to his son Levi, were sold. He told this agent that the sale would disarrange his division, and that he was going to take the matter up and make it some other way.

The circuit court, on hearing, found the deeds were never delivered to Dewey in escrow, but merely for safe

159—42

keeping; that the grantor always retained control over them and there was no delivery to the grantees, and that Josiah J. Shults subsequently voluntarily destroyed them. The court thereupon dismissed the cross-bill of appellant for want of equity, and granted the relief prayed for in the original bill. To reverse this decree of the circuit court the appeal in this case is prosecuted.

Charles Wheaton, for appellant:

A deed delivered as an escrow cannot be revoked. *Millett* v. *Parker*, 2 Metc. (Ky.) 608; *Wright* v. *Railroad Co.* 16 B. Mon. 4; *Worral* v. *Munn*, 1 Seld. 229; *Plank Road Co.* v. *Stevens*, 10 Ind. 1; *Stone* v. *Duvall*, 77 Ill. 475; 2 Washburn on Real Prop. 584, and note.

The depositary of an escrow is as much the agent of the grantee as of the grantor. He is as much bound to deliver the deed on performance of the condition as he is to withhold it until performance. *Everts* v. *Agnes*, 4 Wis. 343, and 6 id. 453; *Black* v. *Shreve*, 13 N. J. 458.

Where a husband makes a deed to his wife and delivers it to a third person for the grantee, on his death the title vests in the wife presently, and the grantor's subsequent destruction of the deed is no revocation of it, unless the grantee assented to such destruction. *Rodgers* v. *Rodgers*, 53 Wis. 36; *Sauliuer* v. *Low*, id. 207.

Delivery to a third person to take effect after the grantor's death is a good present delivery. *Douglas* v. *West*, 140 Ill. 455; *McCalla* v. *Bane*, 5 Fed. Rep. 828; *Weisinger* v. *Cocke*, 67 Miss. 511; *Goodpaster* v. *Leathers*, 123 Ind. 121; *Smiley* v. *Smiley*, 114 id. 258; *Owner* v. *Williams*, id. 179.

To constitute a delivery of a deed no particular formality is required, provided it appears that the grantor intended to part with his title, and the control of the instrument passed to the grantee or to some third person for the grantee. *Roane* v. *Baker*, 120 Ill. 308; *Hill* v. *Hill*, 119 id. 243; *Gunnell* v. *Cockerill*, 79 id. 79; *McElroy* v. *Hiner*, 133 id. 156; *Bryan* v. *Wash*, 2 Gilm. 557.

The destruction of a deed does not re-invest the title in the grantor.  *Irwin* v. *Hall*, 18 Ill. App. 315.

As between father and son no such strict proof of a delivery is required as between strangers.  *Hill* v. *Hill*, 119 Ill. 242; *Walker* v. *Walker*, 42 id. 311; *Weber* v. *Christen*, 121 id. 91.

Where a grant is to a child by way of a gift, and is beneficial in effect, acceptance of the deed will be presumed, although retained by the grantor.  *Reed* v. *Douthit*, 62 Ill. 348; *Bryan* v. *Wash*, 2 Gilm. 557; *Vaughan* v. *Godman*, 103 Ind. 499.

The facts stated in the bill, of themselves would not create any cloud upon the appellee's title, if she had any. 2 Story's Eq. Jur. 11, and note; *McNeil* v. *Ames*, 120 Mass. 481; *Nicholson* v. *Loud*, 115 id. 949; *Howe* v. *Hutchinson*, 105 Ill. 505.

Unfounded apprehension concerning the validity of one's own title, and a false and clamorous assertion of title by the defendant, create no cloud on title.  *March* v. *England*, 55 Ala. 275; *Rea* v. *Longstreet*, 54 id. 281.

GRAHAM H. HARRIS, for appellee:

The very essence of the delivery is the intention of the party.  If he merely places the paper in the hands of a third person as a convenient place of deposit, still intending to retain control over it himself, then there is no delivery.  *Bryan* v. *Wash*, 2 Gilm. 566; *Byars* v. *Spencer*, 101 Ill. 429; *Stinson* v. *Anderson*, 96 id. 373; *Cline* v. *Jones*, 111 id. 570; *Gorman* v. *Gorman*, 98 id. 361; *Benneson* v. *Aiken*, 102 id. 284; *McElroy* v. *Hiner*, 133 id. 156; *Jordan* v. *Davis*, 108 id. 341; *Blackman* v. *Preston*, 123 id. 388; *Baskett* v. *Hassell*, 107 U. S. 602; *Prutsman* v. *Baker*, 30 Wis. 644; 3 Washburn on Real Prop. (5th ed.) 307-320; *Berry* v. *Anderson*, 22 Ind. 36; *Cook* v. *Brown*, 34 N. H. 460; *Fitch* v. *Bunch*, 30 Cal. 208; *Maynard* v. *Maynard*, 10 Mass. 455; Tiedeman on Real Prop. secs. 813-815.

If a deed is to become operative on the death of the grantor, then it is in the nature of a testamentary disposition, is ambulatory, and revocable. *Barnum* v. *Reed,* 136 Ill. 398; *Cline* v. *Jones,* 111 id. 569; *Blackman* v. *Preston,* 123 id. 387.

A bill to remove cloud and quiet title lies wherever there is anything of record which is the semblance of a title, either legal or equitable, or a claim of an interest in land appearing in some legal form, but which in fact is unfounded. If the claim sought to be removed is valid, it is not a cloud. *Fitts* v. *Davis,* 42 Ill. 391; *Reed* v. *Tyler,* 56 id. 288; *Rigdon* v. *Shirk,* 127 id. 411; *Stout* v. *Cook,* 37 id. 283; *Brooks* v. *Kearns,* 86 id. 547; *Campbell* v. *McCahan,* 41 id. 45; *Johnson* v. *Johnson,* 30 id. 215.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

The most important question arising on this record is whether the deeds to the property in question were, after their execution, delivered by the grantor to a third person in escrow, to be by him delivered to the grantees after the death of the grantor.

If the grantor, by his act of delivery, loses all control over the instrument, and by it the grantee is to become possessed of the estate, then there is a sufficient delivery. (*Bryan* v. *Wash,* 2 Gilm. 557; *Cline* v. *Jones,* 111 Ill. 563.) The question is to be determined largely by the intention of the grantor, which may be ascertained by his acts and declarations, and by the circumstances attending the execution of the deed and its delivery to a third party. (*Masterson* v. *Cheek,* 23 Ill. 72; *Walker* v. *Walker,* 42 id. 311.) In *Byars* v. *Spencer,* 101 Ill. 429, it is said (p. 433): "The question as to what acts are necessary to constitute a sufficient delivery to render a deed operative and to pass the title to the land has been the subject of much discussion in this court. * * * It may be delivered to the grantee or to his agent. Nor is any particular form or

ceremony necessary to constitute a sufficient delivery. It may be by acts or words, or both, or by one without the other; but what is said or done must clearly manifest the intention of the grantor and of the grantee that the deed shall at once become operative to pass the title to the land conveyed, and that the grantor loses all control over it."

The question of delivery is one both of law and of fact. From the detail of such facts and attending circumstances is to be determined the legal question as to whether such acts and declarations constitute a legal delivery. It is said, in a case like this the law makes stronger presumptions in favor of the delivery of the deed than in an ordinary case of bargain and sale, for the reason that it was an attempt on the part of the grantor to make a voluntary settlement. That there are stronger presumptions in such cases has frequently been recognized by this court. (*Bryan* v. *Wash, supra; Reed* v. *Douthit,* 62 Ill. 348; *Walker* v. *Walker, supra; Cline* v. *Jones, supra.*) Such settlements, fairly made, are binding on the grantor, unless there be clear and decisive proof that he never parted or intended to part with the possession of the deed; and even if he retained it, the weight of authority is decidedly in favor of its validity, unless there be other circumstances, besides the mere fact of his retaining, to show that it was not intended to be absolute. *Souverbye* v. *Arden,* 1 Johns. Ch. 240; *Bunn* v. *Winthrop,* id. 329; *Scrugham* v. *Wood,* 15 Wend. 545; *Otis* v. *Beckwith,* 49 Ill. 121; *Cline* v. *Jones, supra;* Perry on Trusts, sec. 103.

It follows, therefore, as heretofore stated, that the intention of the grantor is the controlling element. There are some disputed questions of fact in the record. The testimony was in a large degree oral and heard by the chancellor in open court, and, as we have frequently said, where such is the case we will not disturb the decree of the trial court, in so far as it determines questions of fact, unless there is in the finding of the trial court pal-

pable error.   *Baker* v. *Rockabrand,* 118 Ill. 365; *Johnson* v. *Johnson,* 125 id. 510; *Coari* v. *Olsen,* 91 id. 273; *Towle* v. *Wadsworth,* 147 id. 80.

In the absence of the testimony of the custodian who had possession of these deeds for a time, it is largely a matter of presumption as to what directions were given at the time the deeds were deposited by the grantor, or under what conditions or instructions they were placed with Dewey, the custodian.   Considering all the attending circumstances, and the fact that they were afterwards taken away by Shults, the grantor, and subsequently destroyed by him, it was not error for the trial court to reach the conclusion it did that there was no intention on the part of the grantor to lose control of the deeds, or that they should become operative and effective so as to pass title.   On the contrary, it is apparent that the deeds were left for a time with Dewey because of the convenience for safe keeping.   The facts that the grantor during this time continued to exercise acts of ownership and authority over the premises, and that during this time he also sold a portion thereof and proposed to sell the remainder, are inconsistent with the theory of an intentional delivery, operative and effectual to pass title to appellant.

In the case of *Stinson* v. *Anderson,* 96 Ill. 373, the grantor, prior to his second marriage, executed a deed to the children of his former marriage for certain lands, and left it with a magistrate before whom it was acknowledged, to be delivered to them after his death.   At the time it was left he said to the magistrate: "I want you to take it and take care of this deed for me.   If I want it I will call and get it.   If I die or anything serious should happen to me I want you to deliver it to my children, if of age.   If they are not of age, then to deliver it to their guardian, for I want my three children to have the benefit of their mother's labor."   Afterwards the grantor mortgaged the land to secure borrowed money.   After his death the question

arose whether there was a sufficient delivery of the deed to the magistrate to pass title to the three children. This court held in that case there was no sufficient legal delivery of the deed, for the reason a future control was retained over it by the grantor, and these subsequent acts indicated that the delivery to the magistrate was not absolute and the deed should not pass entirely beyond his control.

As we have said, it is not apparent from this record what were the conditions under which the deeds were deposited by the grantor with Dewey, the custodian. After the deeds were executed before the notary public, it appears it was some short time before they were left with Dewey, the custodian, and the grantor might easily have changed his mind, after his conversation with the notary, as to the conditions upon which he intended to deposit the deeds with the custodian.

It is apparent from an examination of this record that it was proper for the circuit court to find there was no sufficient delivery of the deeds to pass title of the lots in question to appellant, and to deny him relief on his cross-bill and enter the decree dismissing it. It is said that even though this be true, the original bill filed by appellee does not entitle her to relief. The purpose of the original bill is to set aside a cloud upon her title. In *Rigdon* v. *Shirk*, 127 Ill. 411, it is said (p. 412): "A cloud is said to be the semblance of a title, either legal or equitable, or a claim of an interest in lands, appearing in some legal form, but which is, in fact, unfounded, or which it would be inequitable to enforce. If the claim sought to be removed is valid, and may be enforced either at law or in equity, it cannot be said to be a cloud." In the former bill filed, in which appellant claimed title to these lots, and which was dismissed without a hearing on its merits, the allegations therein tended to depreciate the title of appellee, or to interfere with the sale of the property by reason of such proceedings appearing upon

abstracts of title thereto, and it was a proper subject of inquiry by a court of equity as to whether such proceedings were a cloud on her title. This former bill was a declaration of title in appellant, and remained on file in the clerk's office of Cook county, notice to all the world that appellant claimed to have some title in these premises. It was a semblance of title, but, as we have found in this proceeding, it could not be enforced either at law or in equity, and therefore it was a cloud upon appellee's title, and it was proper for the circuit court to enter the decree granting the relief asked in the original bill.

We find no error in the decree of the circuit court, and it is accordingly affirmed. *Decree affirmed.*